Yes, Your Honor. Next case for submission, 13-2233 Eastern Missouri, Salvador Silva v. Metropolitan Life Insurance Company. May it please the Court. Peter Stris on behalf of Plaintiff Appellant. I'm going to be speaking for eight minutes, and my colleague Ms. Chung from the United States Department of Labor will be speaking for seven minutes. At bottom, this appeal is about proper scope of ERISA Section 502A3. My client initially sued to obtain contractual death benefits from MetLife, the insurer of an ERISA plan's group policy. After MetLife argued that my client was contractually ineligible under the plan, my client sought to amend his complaint to sue Savas, the plan administrator, for its misconduct in administering the plan. As a remedy, my client asked that Savas be surcharged for the amount of the death benefit he will have lost if MetLife's contractual position is accepted. And the district court ultimately held that my client failed to state a claim using a federal rule of civil procedure, Rule 12 standard, and denied leave to amend as futile. That's the central issue in this case, the fact that that holding was error and must be reversed. Well, let me ask you this question. Your client, this was an open season when he could raise his death limits. Is that correct? There are limits under the plan. I don't know about open season, but there are limits in terms of when he can raise and enroll in supplemental life insurance, correct. And he did not submit any evidence of insurability, which has now been defined as good health. Is that correct? He did not submit what's called a statement of health, and that's the basis on which MetLife denied his contractual claim, correct. You know, one thing I wanted you to explain to me, there are about 200 people who are deficient in some ways. And for many of those 200 people, they're allowing some sort of remedy. Now, those people are still alive. Your client died, and if I saw the death certificate, he died of suicide about six months after he raised. Has it ever been explored in MetLife whether you should have gotten the same privileges of trying to show insurability or good health at the time he obtained the policy? So, Your Honor, I'll answer that question in two parts. First, MetLife has consistently taken the position that it will not apply this retroactively. There's evidence in the record that my client submitted that he would have satisfied the statement of health standard, but MetLife has consistently taken the position that notwithstanding the reason for the failure, the document had to be submitted by my client at the relevant point when he enrolled. That's my first answer. My second answer, though, takes that factual question and puts it in what I think is the proper legal context, which is if you look at the third amended complaint where we were denied leave to amend, the relevant counts, count two and count three, are not against MetLife. They are against Savvis as plan administrator. The first one alleges several acts of misconduct, different breaches of fiduciary duty. The third cause of action specifically says that Savvis violated ERISA by failing to distribute a correct summary plan description. The very reason why those provisions exist in ERISA and the very reason why the Supreme Court has clarified recently in its Amara case that there's an independent remedy under Section 502A3 of the statute is precisely for a case like this. Well, that's what the government is going to be talking about, as I understand. That is correct. Okay. What is the remedy? Let's assume you're right that the Supreme Court now allows for a surcharge and that the remedy under 502A3 is broader than what the district court thought it was. What's the remedy? Do you think we should at this point just enter judgment for your client? Do we send it back for a trial on the matter? What are you asking? I'm asking that you reverse and send the case back. I would, but I don't think as an officer of the court I could get up here and ask for that, and I'll tell you why. Our 502A3 claim against Savvis is essentially a surcharge claim, and the Supreme Court has made clear that you not only have to prove a breach of fiduciary duty, which has not yet been litigated because this was dismissed on the pleadings, but you also have to prove that you were harmed as a result of that breach. I'm confident that we will prove those things on remand, but we haven't had the opportunity yet. So we would ask that the case be remanded so it could proceed. Now with regard to MetLife, the cause of action of the first amended complaint that survived was interpreted by the district court in granting summary judgment as only being a 502A1B claim. That's an error. We have an independent 502A3 claim against MetLife, which I believe could result in the remedies of reformation or equitable estoppel. But again, we weren't able to litigate that, and there are complex fact questions that would have to be adjudicated by the district court on remand. But in all those claims, you were trying to get the death benefit, right? The measure of damages would probably be equivalent to the promised death benefit. But I would note, Your Honor, that that's not the benefit because it's provided for in the contract. It's a benefit under a misrepresentation theory. It's a benefit under a reformation theory. It's entirely independent of the argument that we're entitled to the contract benefit, and that's not an academic point because on the contract claim, MetLife could come forward, and they have in this litigation, and say, oh, well, even if he gave his statement of health, he's actually only entitled to three times his salary because of this provision in the plan, so on and so forth. It's an entirely different claim when we say you promised us $429,000. You made that representation, and now we're ineligible, and as a result, we can't receive it.  But they're allowing some remedy. I've noticed that to some who claim greater, they're limiting it to three times. I don't know what they're basing it on. Well, that's a contract argument that MetLife made in the alternative, and I was using that as an example to show how if we were permitted to actually litigate these issues going forward, it's not clear to me that the remedy under the two causes of action would in fact be coterminous. Now, I would take the position, Your Honor, that even if they are coterminous, that that has no significance. It doesn't bar us from pleading them because at this stage in the litigation, we have no idea whether we're going to prevail or not under the 502A1B claim. In fact, if this court affirms the grant of summary judgment, then there is in fact no contract remedy. It's precisely the reason why we allow the same thing happen in Pilger. That is true, and I think that there's two problems with that case. The first one is the theories were entirely different. In other words, if I come forward and say you denied me benefits I'm entitled under the plan, and your interpretation of the plan is wrong, that's my contract claim, and then I say you breached your fiduciary duty by not following the terms of the plan, that's precisely what Justice Breyer was trying to avoid and that led to the dicta in verity. That's repackaging a claim. That's how I read the Eighth Circuit's decision in that case. If, in fact, you determine that Pilger stands, however, for what the defendants are saying, I would note that that will undoubtedly create a clear circuit split with the other courts of appeal who have decided this issue. I apologize. I intended to reserve time, but I know it's a matter of time. One more question. And maybe Mr. Palin asks, what's your client taking his own life on six months? If there had been a policy issue, wouldn't that negate the policy? My understanding is that for a host of reasons the suicide exclusion didn't apply here, and I think the best evidence for that is benefits were paid under the basic life insurance policy. I have some thoughts that are external to the record as to why, if you're curious, but I think that's not before this court. You've answered my question. Thank you. Thank you. May it please the Court, my name is Evelyn Chung, and I represent the Secretary of Labor, Thomas E. Perez, appearing as an amicus in support of the appellant. Under ERISA, plan administrators are required to provide participants with a summary plan description that includes information that could result in disqualification of benefits. The plaintiff has alleged that Savas, the defendant, failed to satisfy this and other fiduciary duties, and as a result, the plaintiff was not able to collect the supplemental death benefits that his son had signed up for and paid through payroll. The district court incorrectly relied on outdated law to conclude that even if Savas had violated Section 102 and breached its fiduciary duties, that it could not be held responsible for the harm that resulted to the plaintiff, i.e., the loss of benefits. Now, is that against MetLife, or is that against the administrator of the plan? The fiduciary breach claims and the 502A3 claims are against the plan administrator, Savas, which had the responsibility for providing the summary plan description, as well as for administering the statement of health requirement and ensuring that that statement of health was then forwarded to MetLife. And that begs the question, the suit here was against Metropolitan Life, and the amendment was against the administrator, so your position is that there should be a claim against the administrator. You're not charging MetLife with that defalcation, are you? No, the fiduciary breach claim is only against Savas, the plan administrator, not against MetLife, which administered the claims. Now, I want to make sure I'm clear on something. As against Savas, the administrator, there's really two claims here, as I understand it. One is they didn't provide a summary plan description, and secondly, that they didn't properly administer the plan. Specifically, they should have told the decedent that he had to submit a health questionnaire, and they shouldn't have started collecting premiums and all the things they did and didn't do. Zeroing just on the summary plan description for a minute, let's assume we agree with you that just giving him a copy of the plan, which actually the evidence is not even clear he got that, but let's assume he did, and that that doesn't qualify as a summary plan description. What is the remedy for that violation? Certainly, under Varity and well-established case law, a section 102 violation and 104 violation for failing to deliver a summary plan description is a fiduciary breach, and in this case, you would look at the elements of, let's say, a surcharge equitable remedy and see whether there was any harm that was caused by that breach. So in this case, it would be the loss of coverage, which is similar to in Varity and Cigna, where there was failures or misrepresentations to disclose information to participants, and that resulted in loss of coverage. And in those cases, they did find that 502A3 would make whole relief to the participant. So that alone could be the summary plan description violation alone could support that relief is what you're saying? Yes, if all the elements are met, yes. Even if you're not otherwise eligible under the plan? Well, if you are not otherwise eligible under the plan, there could be an argument about causation. It possibly could cut off causation. So in that situation, the surcharge elements would not be met, because even if there had been a technical violation of the summary plan description requirement, there would not have been any harm because the participant would not have been otherwise covered. But here, wasn't there evidence that he was or should have been aware of the requirement to file the statement of health, I think from accessing the computer or something like that, if I recall? Well, the first issue is there was potentially evidence that a question, there's lack of evidence on the record proving that he actually was prompted. It's not in the record. But I do note that the Secretary's reason for appearing today is to talk about the legal issues regarding the availability of remedies, as well as the requirements for summary plan descriptions. And I could cede some time to the plaintiff's counsel to discuss those issues. Now, on the issue of the summary plan description, just shortly, I just want to reiterate, a summary, as the Supreme Court has said in Signa Viomara, is not the same as the original. The evidence here should not have been considered a summary plan description. And in addition, there's no evidence that the document was actually delivered as opposed to being made available to the participant. As a result, the Secretary finds that the district court was also in error regarding its finding that the summary plan description had been provided. And on these two points, we seek that this court reverse the district court's findings. And if there are no further questions, I would like to cede the remainder of my time to appellant. Thank you. Very well. I assume you want that on rebuttal? Why not? Sure. Very good. May it please the court. The district court's judgment should be affirmed. The court properly denied leave to amend to add an equitable claim under ERISA Section 502A3 because plaintiff had an adequate remedy under Section 502A1B. Way into that mic, please. I'm sorry? Ms. Buckle, you over. I didn't catch that last one. I didn't catch your remark. I was trying to say that the court properly denied leave to amend to add an equitable claim under Section 502A3 because the plaintiff had an adequate remedy under Section 502A1B by reason of a claim for benefits. Well, if I understand the rule of law that may apply, that you can have an equitable claim and also get a money judgment in an equitable claim. That's a possibility, but what you can't do is go off under this catch-all provision of ERISA Section 502A3 when another more specific provision such as 502A1B, the claim for benefits, provides adequate relief. But he can't get relief because you said there's no policy. So how is there an adequate relief? No, I don't think that's true. Here's what we said. Well, let me ask you this way. If what you're saying is correct, then all this discussion of Justice Breyer and Cigna is just, I guess, dicta because that was a 502A1B claim. No, he said they didn't have a 502A1B claim. And that's what you're saying, you don't have a 502A1B claim. No, I'm saying that the summary judgment was properly granted. I have not claimed that they we didn't file a motion to dismiss. And if we had, the court would have denied it because he had a claim for benefits. And all of the things that he's complaining about are things that the court can and did consider on a claim for benefits, whether there was adequate notice. In fact, the court goes through at some length on the various factors drawing from Manning v. American Republic, the things that the court can consider, whether the administrator's language is contrary to the terms of the plan. Can I ask you a question about that notice issue? Sure. As I understand it, there's no evidence in the record as to what he saw, other than somebody told your client that he would have been prompted. That's correct. We don't have the screenshot, even today's screenshot. We don't even know what it looks like today, right? That's correct. So we don't have any evidence other than, why is that not pretty gross hearsay to rely upon? Somebody at Sabbath told somebody at MetLife that somebody might have seen a screen that might have had a prompt that he might have seen. Well, I don't think that's true. I think Sabbath would be familiar with their process, and they're the ones who provided the information. Why didn't they just provide a screenshot so we could see what it said? I don't know. It's possible that they had already changed the system by that time, because this was a couple of years after he had enrolled. But I think the answer to your question is that the courts have said that the evidence that the claim administrator is reviewing does not have to comply with the federal rules of evidence. It's designed as an informal process, and the courts have upheld hearsay, and it makes sense to inquire of the person who knows about the system. Now, why wouldn't he at least be entitled to one time of salary? Because he can get that without evidence of insurability. No, he can't, not as a late enrollment. I thought you had a right to go up one time but not multiples of one time. There are several provisions in the plan, and one of them is if you enroll within 31 days after your hiring date, you can elect up to the lesser of three times your salary or $400,000 in supplemental life, no questions asked. But, of course, at that time you then have to start paying for the insurance. If you enroll later, and that is paragraph 9 of the evidence of insurability provisions, if you enroll later during an open enrollment period, you have to provide evidence of insurability for the supplemental life, regardless of the amount that you're requesting. It says if you request insurance that's more than one level above your current amount of supplemental life. That's paragraph 6. It says more than one level above your current insurance. That's if you've already got supplemental life as your current insurance. He did not. He had never elected supplemental life until 2009 when he elected to become effective January 1, 2010. I think that life really could have relied just on the late enrollment. They said also the more than one level because he was going from zero to five, but the late enrollment takes care of it. That's the problem. The district court relied on pickoff. I didn't see that you're trying to defend that. You've sort of switched. I don't think it's necessary to consider pickoff.  What this court has held very clearly in Pilger is that a claimant who has a claim for relief under Section 502A1B may not also seek the same relief under Section 502A3. Is Pilger reconcilable with Amara? Yes, I think it is. How? Because in Amara, the plaintiffs did not have a claim for benefits because their old plan was gone. It had been changed into something else. This man, the plaintiff, certainly had a claim for benefits, and he made all the arguments which the court considered about why he believed that life's decision was arbitrary and capricious, and the court considered all of the evidence and decided that it was not. So he had a claim. It was an unsuccessful claim, but if you have a claim for benefits, you don't also have a claim for equitable relief. What if this guy had had this insurance for 30 years? I mean, does the time make a difference that it's only five months? Because you said there's no equitable relief here, so you can't bring equity into it. That's right. So if somebody at Sabbath had not filled out a claims form 30 years ago and died and been paying premiums for 30 years, MetLife's position would be you get zilch? I don't know what its position would be because that didn't happen. No, answer the question. Legally, under MetLife's position, you get zilch, right? Well, interestingly, there's a very recent case from the, I believe it's the Central District of California, which is Patterson v. Reliance Life Insurance. It's not in our brief. It came out after the briefs were submitted. And that court held that they applied the incontestability clause to someone who had been paying for three years, and because it was outside the two years, they held that applied. I think there are some practical problems with interpreting the incontestability clause to apply to that situation, but that's what the court did in that case. There's also an earlier case, Lawler v. Unum. I don't think it's cited in any of the briefs. The district court may have cited it where the person had been paying for eight years, and the court said they did get nothing. Therefore, we have kind of the two extremes there. Wouldn't there at least be an equitable claim to get back the premiums? There's clearly a claim to get back the premiums. Which were paid back. And they were paid back. That's correct. I brought this up before, and I don't know if it's a legal claim or equitable claim, but Metropolitan Life is opening up for many of the 200 people that didn't put in this health insurance or didn't get it. Sometimes they had a proof of insurability, sometimes they didn't, and they're allowing at least some of those claims now, a great deal of them. And just because this man is dead, it seems to me that if you've allowed some changes and some consideration of, let's say, equitable considerations, why shouldn't he have some consideration of the fact that he didn't have all of this information in the format that's required? It's really a different situation. Those people are still living. They still have the ability to submit evidence of insurability. Well, he's dead, but apparently they may be able to show evidence of insurability. I don't know if they can or cannot, but they should be given that chance. Well, interestingly, they had said in their letters to MetLife that they might be submitting medical records. They didn't submit any. MetLife reviews what they get on the appeals, and there were no medical records submitted. I think the plaintiff's attorney referenced something that was submitted. That was an affidavit from the girlfriend, and I think MetLife has reasonably said that what it's requiring is a statement by the enrollee himself or herself. That's not what the magistrate held. The magistrate didn't consider that as far as I know. That's correct, because it was not evidence of insurability submitted by the proposed insurer, the decedent. As far as the other people, I want to point out something. Many of those people had actually filled out their Statement of Health forms. I understand that. They got to SAVIS. They didn't get to MetLife. This decedent didn't fill out anything, didn't present any evidence of insurability at all, and what SAVIS told MetLife, and it's in the administrative record, is that when he did the enrollment process online, he would have gotten the notice to submit a Statement of Health for the amount of insurance that he was requesting, and he didn't do that. Ms. Buckley, does it matter whether the proposed amended complaint is directed at the administrator as opposed to MetLife? No, I don't think it is. It does, and I'd point out that both the original and the first amended complaint, the first amended complaint on which the summary judgment was granted, that was directed against both MetLife and SAVIS, and this court has held in the past that the plan administrator is a proper party to a claim for benefits. So the claim was against both of them, and the court granted summary judgment to both. In the Bigland v. Raytheon case, which is from the Northern District of Indiana and is cited in our brief, the plaintiff had sued both the insurer and Raytheon, and the court said, well, you know, that Raytheon had been sued on the claim for equitable relief, but since it dismissed that claim because there was an adequate claim for benefits, which I think went ahead and proceeded, I don't know how that was ever resolved, the claim against Raytheon would be dismissed. If there was a claim against the administrator for some negligence and Metropolitan Life didn't participate in any way, but the court or the jury or whatever it is found against the administrator and said the damages would be the amount of the insurance policy, whatever it was, would MetLife stand behind the administrator or say, well, that's your problem? You know, I'm representing both of them. Since we're not at that point, I don't know what the answer to that would be. You don't know the answer, okay. I don't. What's your position? Let's assume that we disagree with the district court and say that giving, first of all, there's no evidence that he got a copy of the policy, but assuming he got a copy of the policy that's 200 pages, I understand. No, no, no, it isn't. Well, how long is it? Here's what we've got. Well, but anyway, let's just assume that giving a copy of the policy is not a summary plan description. What do you think is the remedy that should be ordered in that case? Well, I think it would have to go back to the district court for further proceedings, and I think it probably would have to be remanded again to MetLife for further review. If that's what you're saying, that there are fact questions, I think it would have to go back. So if we agree that giving a copy of the plan is not a summary plan description, you agree that's called a fact plan? Oh, no, I'm sorry. If you're just focusing on the summary plan description, no, because I think as the court held, the enrollment system provided the information, and that's what the court in a Second Circuit federal appendix case shared versus Stanford Health. The enrollment system provided the information. And, you know, what we have in the way of the document that was provided, it's the certificate and ERISA wrapper. It's a little different from some of the cases that they've cited because it does provide all the information that's required by a summary plan description. But it doesn't say you have to submit a health questionnaire. It just says you have to submit evidence of insurability. But the enrollment process tells you that's the statement of health, and I think that was a reasonable interpretation by MetLife. So you're saying that that does qualify as a summary plan description? I am. I'm saying it functioned as both. Thank you. Mr. Stris, we'll give you two minutes. Thank you. I appreciate that. I'd like to make three brief points. The first one is this. Opposing counsel is not clearly relying on PECOF. They're relying entirely on this verity argument. And essentially what we hear from opposing counsel is that there's a difference between not having a 502A1B claim, such as in Amara, and having but not prevailing on that claim. That obviously can't be the law. It would encourage plaintiffs to not bring weak 502A1B claims for fear that they would be barred. And I bet that defendants in cases where we as plaintiff's attorneys didn't bring those claims would say that we should have brought the claim and we had it. It's essentially putting ERISA up against the alternative pleading rules of the Federal Rules of Civil Procedure, and there's nothing to indicate that that's the law. The second point I'd like to make, and the third are in response to questions. The first I think was a question that you, Judge Grunder, asked, which was wasn't my client aware that there was a statement of health requirement? And I think that it's important to recognize that that and similar issues are precisely why there needs to be a remand. We had an exchange on this a little bit earlier. We still have to prove on remand that there was a breach of fiduciary duty, that the defendants in essence violated the duty of prudence. We still need to prove that we qualify for an equitable remedy. Now, I believe we can do that, but we had no opportunity because this was dismissed on the pleadings. Finally, and probably most importantly, I'd like to directly confront a question, Judge Malloy, that you asked my colleague from the Department of Labor, which is this. What is the remedy for a pure violation of a summary plan description requirement? Because it's a great question. Can it be that defendants don't provide a valid summary plan description and that opens them up to liability for what would have been the full value of benefits? Not only do I agree with the Secretary's position that the answer is yes, I think it's critical for the answer to be yes in order for the summary plan description requirement of ERISA to mean anything. The whole point of that provision in ERISA is that material terms of a plan, things like this that are going to disqualify you from getting benefits, have to be summarized and it has to be done in a way that a lay person can understand. So, of course, if you don't give a summary plan description or if you give an invalid one, you should be able to litigate that and it should have teeth. And for those reasons, we ask for reversal. Thank you. Thank you, Mr. Stris. Ms. Buckle, you had mentioned a case that wasn't cited in your briefs. You may want to consider submitting a 28-J on that. If not, fine. But, okay. All right. We appreciate both counsel's, all counsel's arguments. And the case will be submitted and will be cited in due course.